UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x
JUAN EASON,                                    :
                                               :
                           Plaintiff,          :
                                               :         **INITIAL REVIEW**
          -against-                            :         **ORDER RE:**
                                               :         **COMPLAINT**
FRANK MALETZ, et al.,                          :
                                               :         24-CV-1493 (VDO)
                           Defendants.         :
---------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Juan Eason, a sentenced inmate[1] incarcerated at MacDougall-Walker Correctional Institution, filed this case *pro se* pursuant to 42 U.S.C. § 1983 against three defendants, Frank Maletz, Pierre Estime, and Jennifer Cruz. Plaintiff asserts claims for deliberate indifference to medical needs against all Defendants in their individual capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

---

[1] Information on the Department of Correction website shows that Plaintiff was sentenced on June 26, 2007 to a term of imprisonment of 50 years. *See* www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=174879 (last visited Nov. 4, 2024).

I.  **FACTUAL BACKGROUND**

The incidents underlying this action occurred while Plaintiff was confined at MacDougall-Walker Correctional Institution. Before he entered Department of Correction ("DOC") custody, Plaintiff underwent spinal surgery to repair a herniated disc at L5-S1. ECF No. 1 ¶ 9. He has had three MRIs of his spine between 2019 and 2023, with the last on May 22, 2023. *Id.* ¶ 10.

On March 22, 2022, Plaintiff met with orthopedic specialist APRN Libros. *Id.* ¶ 11. Although they discussed a treatment plan, nothing was done. *Id*. On December 7, 2022, Plaintiff met with Dr. Maletz, the on-site orthopedist, who submitted a request that Plaintiff's surgery be expedited. *Id.* ¶ 12.

On March 16, 2023, Plaintiff submitted a request to Dr. Estime, his treatment provider, asking to be seen about issues with his lower back, but he received no response. *Id.* ¶ 13. Plaintiff saw Dr. Estime on May 26, 2023. *Id.* ¶ 14. When Plaintiff asked when he would be scheduled for surgery, Dr. Estime stated that arranging for surgery was not his job. *Id.*

On June 8, 2023, Plaintiff submitted a request to Defendant Cruz, seeking her assistance in arranging for surgery. *Id.* ¶ 15. Defendant Cruz responded that surgeries were initiated by the provider. *Id.* ¶ 16. Plaintiff understood this to mean that Dr. Estime, as Plaintiff's primary care provider, should have arranged for his surgery. *Id.*

On July 25, 2023, Plaintiff had a second consultation with APRN Libros at UConn Health. *Id.* ¶ 17. On August 9, 2023, Dr. Maletz told Plaintiff that his surgery would be scheduled "soon." *Id.* ¶ 18.

On September 9, 2023, Plaintiff was brought to the infirmary by wheelchair, and held overnight for observation, after he lost all feeling in his lower extremities and fell in the shower.

2

*Id.* On November 3, 2023, Plaintiff underwent a neurological examination at UConn. *Id.* ¶ 20. The neurologist agreed with the recommendation for surgery. *Id.*

On January 16, 2024, Dr. Estime saw Plaintiff for complaints of severe lower back pain, but nothing was done. *Id.* ¶ 22. Dr. Estime again told Plaintiff that arranging for surgery was not his job. *Id.* Plaintiff also wrote to the Deputy Warden seeking treatment, but the Deputy Warden forwarded the request to Defendant Cruz. *Id.* ¶ 23.

On April 7, 2024, Plaintiff wrote to Dr. Estime seeking reevaluation because the pain medication he had been prescribed had expired and was no longer addressing his pain but was never called to the medical unit. *Id.* ¶ 25.

## II.     LEGAL STANDARD

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a government entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether

they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (per curiam) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Harden v. Doe*, No. 19-CV-3839(CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

### III. **DISCUSSION**

Plaintiff contends that all Defendants were deliberately indifferent to his serious medical need for spinal surgery and also that Defendant Estime was deliberately indifferent to his need

for pain medication.

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference claim, Plaintiff must present evidence of sufficiently harmful acts or omissions by a prison official. *See Estelle*, 429 U.S. at 104-06. The prison official must have intended to deny or unreasonably delay access to necessary medical care, or to wantonly inflict unnecessary pain. *See id.* However, "not every lapse in prison medical care will rise to the level of a constitutional violation; rather, the conduct complained of must shock the conscience or constitute a barbarous act." *Daniels v. Murphy*, No. 3:11-cv-286(SRU), 014 WL 3547235, at *8 (D. Conn. July 17, 2014) (citation and brackets omitted).

To state a claim for deliberate indifference to a serious medical need, Plaintiff must satisfy both objective and subjective components. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995). To meet the objective component, Plaintiff "must show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order). When determining whether a medical need is sufficiently serious, the court considers factors including whether "a reasonable doctor or patient would find [the condition] important and worthy of comment"; whether the condition "significantly affects an individual's daily activities"; and whether the condition causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). If the court determines that Plaintiff was deprived of medical care, it must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy and caused or

5

will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citation omitted). If the prisoner was completely deprived of medical care, the courts "examine whether [his or her] medical condition is sufficiently serious." *Id*. (citation omitted). Where the prisoner received medical treatment but complains that it was somehow inadequate, "the seriousness inquiry is narrower. *Id*. The court must determine "whether the inadequacy in the medical care is sufficiently serious." *Thompson v. Recette*, 519 F. App'x 32, 34 (2d Cir. 2013) (summary order).

Under the subjective prong of the deliberate indifference test, a prison official must have been actually aware that his or her actions or inactions would cause a substantial risk of harm to the inmate. *See Salahuddin*, 467 F.3d at 279-80 (citation omitted). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id*. at 280. Recklessness requires more than merely negligent conduct. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim," and that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703. Medical malpractice "may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019).

Plaintiff alleges that he experiences severe lower back pain and was recommended for surgery by both Dr. Maletz and APRN Libros. Thus, the Court considers his medical need serious. He further alleges that all Defendants are aware of the need for surgery but have done nothing to schedule the procedure. Indeed, Plaintiff alleges that the failure to schedule the procedure has caused him to lose feeling in his lower extremities on at least one occasion. Thus,

6

Plaintiff has plausibly stated a claim for deliberate indifference to serious medical needs regarding the failure to schedule surgery.[2] The case also will proceed on Plaintiff's claim against Dr. Estime for failure to address Plaintiff's complaints of lower back pain after his prescription expired.

## IV.    CONCLUSION

The case will proceed on the Eighth Amendment claims for deliberate indifferent to medical needs against all Defendants on Plaintiff's claims regarding the failure to schedule surgery and against Defendant Estime on Plaintiff's claim regarding lack of treatment for pain.

The Court enters the following orders.

(1)    **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for defendants Maletz, Estime, and Cruz, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided by **December 9, 2024**, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the cost of such service.

(2)    The Clerk shall send Plaintiff a copy of this Order.

(3)    The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

---

[2] The Court notes that Dr. Maletz's statement that surgery would be scheduled soon and Dr. Estime's statement that it was not his responsibility to arrange for surgery could support an inference that they did not have the authority to actually schedule the surgical procedure. However, this possibility is better addressed at a later stage of litigation on a more fully developed record.

(4) Defendants shall file their response, either an answer or motion to dismiss, **within sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited in the Initial Review Order.  They also may include all additional defenses permitted by the Federal Rules of Civil Procedure.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **June 16, 2025**.  Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed by **July 16, 2025**.

(7) Pursuant to Local Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or if the response is not timely filed, the dispositive motion can be granted absent objection.

(8) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.  As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendant's counsel by regular mail.  In addition, Plaintiff must serve copies of all documents by regular mail on any defendant who does not participate in electronic filing.

(9) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Plaintiff.

**Changes of Address.**  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(d)1 provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is

incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED.**

Hartford, Connecticut
November 18, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge